## WILLIAM NELSON v. STATE.

No. A-2667.   Opinion Filed November 12, 1917.

(162 Pac.  460.)

1.   **APPEAL AND ERROR—Question of Fact.**  It is the province of the jury to determine questions of fact and decide between conflicting inferences, and the duty of this court to interfere arises only when it can see that the verdict is contrary to the evidence or appears to have been influenced by passion or prejudice.

2.   **SAME—Harmless Error—Instruction.**  Instruction as to the statutory rule of prima facie evidence examined, and **held** to be erroneous.

3.   **TRIAL—Argument.**  During the closing argument private counsel for the state commented on matters outside the record and outside the proof calculated to prejudice the defendant.  **Held**, that the court erred in overruling objections and in refusing to instruct the jury not to consider the same.

*Appeal from County Court, Beaver County; John Spohn, Judge.*

William Nelson was convicted of a violation of the prohibitory law, and he appeals.   Reversed.

*Loofbourrow & Rizley*, for plaintiff in error.

*S. P. Freeling*, Atty. Gen., and *R. McMillan*, Asst. Atty. Gen., for the State.

PER CURIAM.   The plaintiff in error was convicted, and in pursuance of the verdict, sentenced to be confined in the county jail for 30 days and to pay a fine of $50. The information charged that William Nelson did knowingly, willfully, and unlawfully convey and transfer certain intoxicating liquors, to wit, about 20 pints of whisky, from a point unknown to another point in Beaver county, i. e., the fairgrounds, adjoining the town of Beaver on the south.

The evidence for the state was substantially as follows: Sheriff Jones testified that about 10 o'clock p. m., he saw defendant Nelson, John Frederick, Shell Little, and a man named Watkins, also called "Rock Island Slim," in a Ford car at the fairgrounds; that he stopped the car and found between the back and front seats a box containing whisky, and he arrested Nelson, Little, and Watkins; that Deputy Sheriffs Shockley and Murray were with him; that Watkins and Frederick were in the back seat. He produced the box with seven or eight pints of whisky, and said several other pints were broken; that he did not know how long the whisky had been in the car, or whose whisky it was; that defendant Nelson owned the car and was driving it at the time; that Nelson was not in the car when he first saw it.

To the same effect is the testimony of Deputy Sheriffs Shockley and Murray.

John Frederick testified: That he first saw defendant Nelson at the fairgrounds, and he asked him when he was going back to town. Nelson said, "Right away." That he got into the car and saw the box of liquor, and put his feet on the box. That Nelson got out, and was gone ten or 20 minutes and came back with Shell Little. That Watkins was standing near the car, and Nelson said, "Get in and ride to town." When they started Sheriff Jones stopped the car and searched it.

For the defense Sanford Taylor testified that he lived two and one-half miles north of Floris; that he, Watkins, and Clinkenbeard started from his place about 1 o'clock p. m., in Nelson's Ford car, and came to Forgan, arriving there about 4 o'clock, and from there Mrs. Lansden rode with them to Beaver; that the box of liquor was not in the

car at any time during the trip; that he, with Mrs. Lansden, stopped at the White House Hotel for supper, and after supper Nelson took them to the fairgrounds; that the box of liquor was not in the car when they went to the fairgrounds.

Earl Clinkenbeard testified that he was in the threshing business, and came with the party from Taylor's place to Forgan, and from Forgan to Beaver, where they all left the car, and later Mrs. Lansden and Taylor went to the fairgrounds in Nelson's car; that it was then dark; that witness later walked out to the fairgrounds.

Mrs. C. Lansden testified that, with her sister, she conducts a bakery business at Forgan; that she was in the back seat, and, after eating supper at the White House Hotel at Beaver, Mr. Nelson took her and Mr. Taylor to the fairgrounds in his car; that there was no such package as the liquor box in the car.

Shell Little testified: That he lived near Beaver, and went from town in Nelson's car, with his brother and Floyd Layden. It was after dark. On the way a fellow stopped and asked where they were going, and Nelson said, "To the fair; get in;" and this fellow picked up a box and put it in the back end of the car, and got in and rode with them. That he walked around with Nelson at the fair, and when they returned to the car Watkins and John Frederick were in it. That John Frederick was the man who put the box in the car.

Floyd Layden testified that he rode with Shell and Jack Little and some other fellow out to the fairgrounds in Nelson's car, and on the way out a fellow stopped them and put a box in the car and rode to the fairgrounds on

.the running board; that it was John Frederick that put the package in the car.

Vic Hall testified: That he was a farmer living three miles from Beaver; had lived there eight years; knew defendant Nelson; rode with him from the White House Hotel to the fairgrounds with Shell and Jack Little and another fellow in the car. On the way a fellow stopped the car and put a box "similar to the one here" in the car. Nobody asked him anything about it.

William Nelson, as a witness in his own behalf, testified that he had lived in the vicinity of Floris about 11 years, and that year had 200 acres of row crop, and with his partner had 350 acres of wheat; that on the day in question he drove, with Taylor, Watkins, and Clinkenbeard, to Forgan, and from there Mrs. Lansden rode with them to Beaver; all got out at the White House Hotel, and he went up town; went back to the hotel and took Taylor and Mrs. Lansden to the fairgrounds, and then came back for supper to the White House Hotel; then Shell Little, Floyd and Jack Layden, and another man got in the car to go to the fairgrounds; on the way a party stopped them and wanted to ride; that he did not pay any attention to the man, and did not know that he had put anything in the car, and did not know that the man was going to put the box in the car, and knew nothing about the contents of the box until after he was arrested.

Of the various errors assigned, we deem it only necessary to consider two or three.

First, it is contended that the evidence is insufficient to support the verdict. After a careful consideration of the evidence in the case, we are not prepared to say that the jury were not warranted in finding the verdict re-

turned by them. The credibility of the witnesses and the weight to be given to their testimony was a question solely for the jury's determination, and, to reverse a judgment on the ground that the verdict is contrary to law and to the evidence, this court must find as a matter of law that the evidence is insufficient to warrant a conviction.

Objection was made and exception taken and allowed to the giving of instruction No. 8, which reads as follows:

"You are further instructed that 'the keeping in excess of one quart of any spirituous, vinous, fermented, or malt liquors, or any imitation thereof, or substitute therefor, in any liquors or compounds of any kind or description whatever, whether medicated or not, which contains as much as one-half of one per centum of alcohol measused by volume and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States, or in any manner permitting any other person to have or keep any such liquors in or about his place of business, or any place of amusement or recreation, or any public resort, or any clubroom, shall be *prima facie* evidence of an intention to convey, sell, or otherwise dispose of such liquors.' "

As a general rule, instructions as to the statutory rule of *prima facie* proof are only applicable where the charge is unlawful possession with intent to violate provisions of the prohibitory law. The giving of this instruction constitutes error, because the court failed to define the term, "*prima facie* evidence." See *Wilson v. State*, 11 Okla. Cr. 510, 148 Pac. 823. As a general rule, it is the duty of the court to define all technical terms of the law used by it in such a way as to give a correct idea of

the meaning of those words to persons unlearned in the law.

One of the grounds of the motion for a new trial and upon which error is assigned is:

"The court erred in overruling objections of the defendant and in not instructing the jury not to consider the statements of counsel for the state in his closing argument, wherein he stated: 'Now counsel for the defendant argue that John Frederick was the owner of this whisky and placed it in Bill Nelson's car; that proposition is preposterous, because part of this jury knows that only yesterday John Frederick was acquitted by a jury in this court of the identical charge with which Bill Nelson is now being tried.' "

It appears from the record that at the time this statement was made counsel for the defendant objected for the reason that the same is highly prejudicial to the rights of this defendant, and asked the court to direct the jury not to consider said statements and argument. Which objection was by the court overruled and exception allowed. These statements were not warranted by the evidence, and were plainly calculated to prejudice the defendant. The fact that a jury had failed to convict the state's witness John Frederick of the identical charge was not in evidence, and for this reason it was the duty of the court to sustain the objection made and direct the jury not to consider such improper remarks.

We do not deem it necessary to discuss other questions raised. For the reasons stated, the judgment is reversed.